Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in a Pre-Trial Agreement dated 22 July 1994 as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time an employment relationship existed between plaintiff and defendant-employer.
3. Transamerica Insurance Company was the compensation carrier on the risk.
4. On 4 August 1992 plaintiff sustained a compensable injury to his back, neck and shoulder while in the course and scope of his employment with defendant-employer.
5. At the time of his compensable injury plaintiff's average weekly wage was $363.90, yielding a compensation rate of $242.61.
6. Plaintiff received a Form 21 Agreement for Compensation for Disability from Transamerica Insurance Company dated 4 March 1993 signed by Nivia Fernandez in which Transamerica stipulated that plaintiff had been temporarily totally disabled from 25 August 1992 until 13 November 1992 and agreed to pay benefits for the same. Payment of said benefits was made in accordance with the Agreement. Plaintiff did not sign or return the Agreement to defendants.
7. On 23 November 1993 Transamerica issued a check to plaintiff in the amount of $1,819.58, said amount equals to 2.5% permanent partial impairment of the back. The check stated that it was "in payment of benefits to be applied later to permanent partial disability/temporary total disability."
8. At the request of plaintiff's counsel, Transamerica voluntarily began paying temporary total disability payments on 9 March 1994 at a rate of $388.16 and is continuing payment at present. This figure was calculated to be eighty percent of plaintiff's compensation rate based on bi-weekly payments with twenty percent being withheld for potential future payment to plaintiff's counsel, if so ordered by the Industrial Commission.
9. Based on the recommendations of Dr. Melin, defendant-carrier provided physical therapy benefits to employee in the spring of 1994.
10. Plaintiff had treated with, among others, Kevin Scully of Wilmington, North Carolina; Dr. Margit Royal of Wilmington, North Carolina; and Dr. Thomas Melin of Wilmington, North Carolina.
11. The parties also stipulated Industrial Commission Forms 18, 19, 28B and 33 into evidence. The parties submitted all medical records by letter stipulating these documents into evidence, including the records of Eastern Carolina Emergency Physicians, Coastal Orthopedics, P.A., Azalea Coast Neurological Associates and Coastal Neurosurgical Associates.
* * * * * * * * * * *
RULINGS ON EVIDENCE
The objections contained within the deposition of Thomas E. Melin, M.D., are OVERRULED.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. On 4 August 1992 plaintiff was injured while working for defendant-employer as an extra in the production of a movie entitled Super Mario Brothers, on the Carolco lot in Wilmington, North Carolina. Plaintiff's injuries included back pain, neck pain with radiating pain into his right shoulder, right leg and left hip, as well as weakness of his right leg.
2. Prior to going to work as an extra for defendant-employer, plaintiff worked as a janitor, a kitchen maintenance worker, a cook, a bartender, a truck driver and a gold prospector. Plaintiff subsequently attended school to obtain training to be a travel agent, following which plaintiff worked as a cook, restaurant dishwasher and ticket seller at a travel agency.
3. As a result of his compensable injury on 4 August 1992 plaintiff was seen and treated, inter alia, by the Eastern North Carolina Emergency Physicians, Dr. Scully, Dr. Royal and Dr. Melin.
4. As a result of his compensable injury on 4 August 1992 plaintiff was out of work and incapable of earning wages with defendant-employer or in any other employment from 25 August 1992 until 13 November 1992, at which time plaintiff returned to work for various employers as an extra in movies and television productions.
5. Although plaintiff did not work consistently following 13 November 1992, plaintiff's work history is such that he also worked sporadically before his compensable injury on 4 August 1992. Plaintiff was capable of working in the same jobs as before his injury.
6. By 5 May 1994 plaintiff reached maximum medical improvement from his compensable injury on 4 August 1992. As a result of his compensable injury on 4 August 1992, plaintiff has a five percent (5%) permanent partial disability of his back. Plaintiff's permanent partial disability anticipates that plaintiff will have some degree of discomfort. Plaintiff's condition is not to the point that it is incapacitating and precludes plaintiff from doing even light duty work.
7. Membership in a spa or health club is not medically or reasonably necessary to effect a cure, give relief or lessen the period of disability from his 4 August 1992 compensable injury, as plaintiff will receive similar benefit from a home exercise program. Plaintiff's home exercise program is typically recommended for and used by patients such as plaintiff.
8. At the request of plaintiff's counsel, Transamerica voluntarily began paying temporary total disability compensation payments to plaintiff on 9 March 1994 at the rate of $388.16, and is continuing payment at present. This figure was calculated to be eighty percent of plaintiff's compensation rate based on bi-weekly payments with twenty percent being withheld for potential future payment to plaintiff's counsel, if so ordered by the Industrial Commission.
* * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 4 August 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2 (6).
2. On 4 August 1992, plaintiff's average weekly wage was $363.90, yielding a compensation rate of $242.61. G.S. § 97-2 (5).
3. As a result of his injury by accident on 4 August 1992, plaintiff is entitled to temporary total disability compensation at the rate of $242.61 per week, from 25 August 1992 until 13 November 1992. Defendants, however, are entitled to a credit for those amounts of compensation previously paid to plaintiff. G.S. § 97-29.
4. As a result of his injury by accident on 4 August 1992, plaintiff has a five percent (5%) permanent partial disability to his back, for which he is entitled to compensation at the rate of $242.61 per week, for a period of 15 weeks. Defendants, however, are entitled to a credit for those amounts of compensation previously paid to plaintiff. G.S. § 97-31 (23).
5. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 4 August 1992; however, defendants are not responsible for the costs associated with any health club or spa of which plaintiff may be a member. G.S. § 97-25.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. For his temporary total disability, defendants shall pay temporary total disability compensation to plaintiff at the rate of $242.61 per week, from 25 August 1992 until 13 November 1992. Defendants, however, are entitled to a credit for the amount of compensation previously paid to plaintiff. Amounts which have accrued, minus the credit, shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney fee approved in Paragraph 4.
2. For his permanent partial disability, defendants shall pay permanent partial disability compensation to plaintiff at the rate of $242.61 per week, for a period of 15 weeks for the five percent (5%) permanent partial impairment rating to his back. Defendants, however, are entitled to a credit for the amount of compensation paid to plaintiff. Amounts which have accrued, minus the credit, shall be paid to plaintiff in a lump sum, uncommuted, subject to the attorney fee approved in Paragraph 4.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 4 August 1992; however, defendants are not responsible for the costs associated with any health club or spa of which plaintiff may be a member.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sums due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from those sums and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
ORDER
By letter dated 27 December 1995 defendants filed a Motion to Strike Plaintiff's Oral Argument requesting that plaintiff's oral argument not be considered by this panel in reviewing this matter. Upon review of defendants motion and the evidence in this case,
IT IS ORDERED that defendants Motion is DENIED.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
BSB:be